JAMES B. MESSMORE, ET AL. *v.* J. E. STONE, ADMR.

[Abstract Kentucky Law Reporter, Vol. 6—596, 599.]

**Care of Trustee in Managing an Estate.**

An administrator, not guilty of bad faith, to be relieved from liability or loss in managing the estate entrusted to him is only required to exercise such care as a competent person would ordinarily exercise under the same circumstances in reference to his own affairs.

**Parties to Administrator's Suit to Sell Real Estate to Pay Debts.**

The heirs are necessary parties in a proceeding of an administrator to sell real estate to pay debts, and a judgment against infants in such a proceeding is void when they were not served with process.

APPEAL FROM HANCOCK CIRCUIT COURT.

February 26, 1885.

OPINION BY JUDGE HINES:

Roberts died in June, 1863, intestate, leaving four children under age and three of them under fourteen years of age. He owned at his death some real estate, nineteen slaves and some personal property. On the 29th of July, 1863, the appellee, Stone, administered on the estate and on the 10th day of August, 1863, he filed a suit in equity against the heirs and creditors alleging that the indebtedness of the estate, the extent of which was unknown to him, was greater than the amount that could be realized from the personalty, and asking the court to have the indebtedness ascertained and direct him as to the sale of the slaves or realty. The case was referred

to the master to ascertain and report the amount of the indebtedness and the assets. The report was made showing an indebtedness above the value of personal assets, of over three thousand dollars, whereupon the court directed the administrator to sell in his discretion such of the slaves as were necessary to pay the debts of the estate. The slaves were not sold and after they were made free by amendment to the Federal Constitution in December, 1865, the court decreed a sale of the land to pay the debts; under this decree the greater portion of the land was sold.

The present action was brought by the heirs against the administrator Stone, his sureties and the purchasers of the land, asking that the sales of the land be set aside upon the ground that the decree of sale was void because the plaintiffs had not been served with process so as to make them parties to the action, alleging that the negligent conduct of the administrator in failing to dispose of the slaves was the cause of their loss and of the necessity to sell the land to pay the debts and asking that he be compelled to account for the value of the slaves, and to reaccount. The court set aside the judgment ordering a sale of the land, refused to hold the administrator responsible for the value of the slaves, and referred the case to the commissioner to ascertain the value of the rents of the land and of improvements and for a reaccounting with the administrator. From this judgment the heirs appeal because the administrator was not held liable for the slaves, and Stone appeals from that portion of the decree requiring him to reaccount and settle.

No wilful wrong is imputed to the administrator in failing to sell the slaves. He is sought to be held liable upon the ground of negligence only. The absence of bad faith on the part of a personal representative, when he receives compensations for his services as in this case, he is held to such care in the management of the estate as a competent person would ordinarily exercise under the same circumstances in reference to his own affairs. Has such care been exercised in this instance is the inquiry. If without an order of court, the administrator could have sold the slaves, he was not required to do so prior to the decree of February 10th, 1864, because the amount of the indebtedness of the estate had not been ascertained and it was therefore impossible to know to what extent sales

20

would be necessary. There were several suits pending against the estate, the result of which could not be foretold, leaving the assets as well as the liabilities of the estate in an undermined condition. The war between the sates was then flagrant. Slaves were enlisting in the Federal army and crossing the border into non-slave-holding states where they were free from molestation by the owner. Such property had become so demoralized that during the year 1863, especially in the border counties of the state, it was practically beyond the control of the owner, and but of little, if any, marketable value. The evidence shows there were two sales of slaves in the county where the slaves were owned in the month of February, 1864, but that during the whole of that year and afterward they were of no marketable value. This is the testimony of slave owners and residents of the county, the only material evidence to establish the contrary being the two sales referred to. The purchasers in all instances in the fall of 1863 and in February, 1864, testify that the purchases were made because they had faith in the success of the Confederacy and because greenbacks, the currency of the Federal Government was so plentiful and so depreciated as compared with gold that it required from two to three dollars in greenbacks to have the purchasing capacity of one in gold. Under such circumstances and with such surroundings it appears to us that the administrator did not fail in his duty by not offering the slaves for public sale as required by the order of the court. The most valuable of these slaves either enlisted in the army or crossed the river into non-slave-holding territory in the early part of the fall, 1864. The court did not err in refusing to make the appellant responsible for the value of the slaves.

As to the cross-appeal there is no one complaining except the administrator. The whole judgment is void because the infants were not served with process. The court then required the summons to be served on the infant under fourteen years and on his guardian parent, or other person having the infant under charge. There was no guardian and no parent. The summons were served on the infants only. It is claimed that this was sufficient because the administrator had charge of the children and had instituted the suit. The evidence does not establish, even if that would be sufficient, that the administrator had not exercised any more control over

them than to pay for their board and schooling. That is not such control as is contemplated by the code. But it is insisted for the administrator that even if the service of summons was not sufficient to bring appellant before the court and the judgment for the sale of the land was void for that reason. The other orders made in the case in reference to the settlement of the administrator were valid because the heirs had nothing to do with these matters, they concerning the administrator and the creditors alone. The proceeding was to obtain authority for the administrator to sell land or slaves to pay the debts and as an incident the court ascertained the amount of the indebtedness. To such a proceeding the heirs were necessary parties although the code of 1854 says they may be made parties. For the settlement of the accounts of the administrator affecting the disposition of the personalty only which comes to his hands without the aid of a court of equity, the county court had jurisdiction. Beside there was no judgment for cost against the administrator and nothing to show that the setting aside of these orders are prejudicial to him. It may be found on final hearing that the judgment is not prejudicial to him.

Judgment *affirmed* on the appeal and cross-appeal.

*W. Lindsay, for appellants.*

*W. P. D. Bush, G. W. Williams, for appellees.*

[Cited, *Henderson Trust Co. v. Stuart,* 108 Ky. 170, 21 Ky. L. 1664, 55 S. W. 1082, 48 L. R. A. 49.]